**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: Amanda Jump | ) | Case No. |
| | ) | |
| | ) | |
| Plaintiff | ) | COMPLAINT |
| | ) | |
| | ) | |
| v. | ) | July Demand Requested |
| | ) | |
| Meyer Njus Tanick, P.A. | ) | |
| 330 2nd Avenue South | ) | |
| Suite 350 | ) | |
| Minneapolis, MN 55401 | ) | |
| Defendant | ) | |

_____

Now comes Plaintiff, by and through her attorneys, and, for her Complaint alleges as follows:

## INTRODUCTION

1. Plaintiff, Amanda Jump, brings this action to secure redress from unlawful collection practices engaged in by Defendant, Meyer & Njus, P.A... Plaintiff allege violation of the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 et seq. ("FDCPA").
2. The FDCPA makes clear that within five days of any initial communication, a debt collector clearly state who the current creditor of the Debtor is. 15 U.S.C. Section 1692g

## JURISDICTION AND VENUE

3. This court has jurisdiction pursuant to 28 U.S.C. Section 1331, 1337, 1367; and 15 U.S.C. section 1692(d).
4. Venue is proper because a substantial part of the events giving rise to this claim occurred in this District.

## PARTIES

5. Plaintiff, Amanda Jump (hereinafter "Plaintiff") incurred an obligation to

pay money, the primary purpose of which was for personal, family, or household uses (the "Debt").

6. Plaintiff is a resident of the State of Illinois
7. Defendant, Meyer Njus Tanick, P.A. ("Defendant"), is an Minnesota business entity with an address of 330 2nd Ave, Suite 350, Minneapolis, MN 55401, operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. Section 1692a(6).
8. Unless otherwise stated herein, the term "Defendant" shall refer to Meyer Njus Tanick, P.A.
9. At some point, the original creditor, transferred this debt to Defendant for debt collection.

## ALLEGATIONS

10. The Plaintiff allegedly incurred a financial obligation in the approximate amount of $1961.06 (the "Debt") to an original creditor (the "Creditor")
11. The Debt was purchased, assigned or transferred to Defendant for collection, or Defendant was employed by the Creditor to collect to Debt.
12. The Defendant attempted to collect the Debt and, as such, engaged in "communications" as defined in 15 U.S.C. Section 1692a(2).
13. On August 28, 2018, Defendant sent an initial communication to Plaintiff.  See Exhibit A.
14. Debtor received said letter on or about September 4, 2018.  See Exhibit A.
15. The correspondence identifies Defendant as "Attorneys at Law" and a "debt collector."  See Exhibit A.
16. The correspondence further listed the attorneys whom work for Defendant and their jurisdictions of admission.  Among the attorneys identified is Elila K Civelli ("Civelli").  See Exhibit A.
17. On the signature line of the correspondence it purported to be sent by

attorney Civelli. However, the correspondence contained indiscernible scribble. See Exhibit A.

18. Synchrony Bank is one of the largest issuers of credit in the United States. As such it stands to reason that Synchrony Bank has a proportionally large number of accounts that are referred to collection activities by third-party debt collectors such as Defendant.

19. Synchrony Bank works with Defendant on a regular basis and Defendant sends thousands of identical collection letters to consumers on a daily basis. See e.g., Knack-Toms v. Meyer Njus Tanick, PA No. 18-cv-50249, 2018 U.S. Dist. LEXIS 192002 (N.D. Ill. Nov 9, 2018).

20. The collection letter at issue here contains nearly identical language as the collection letter in Knack-Toms.

21. The attorney purportedly sending the correspondence to Plaintiff allow their signature to be included on hundreds of such collection letters per day without engaging in meaningful review of the underlying account prior to determining the veracity of the representations.

22. The lack of attorney review is evidenced by the nature of the signature appearing on the correspondence.

23. The automated nature of the manner in which Defendant sends its collection letters is further demonstrated by the existence of a bar code on the bottom of each collection letter, as this bar code is likely included as a way to more readily track the mass amount of collection letters Defendant sends to consumers on a daily basis.

24. Based upon the automated nature of Defendant's collection letter process, and the representations inherent within such communications, it would be virtually impossible for a single attorney to review the mass amount of collection letters Defendant sends in relation to Synchrony debts.

25. The lack of meaningful review in the correspondence sent by Defendant is further evinced upon considering and reviewing the multitude of complaints that have been filed against Defendant in

federal courts throughout the country, as well as with Consumer Financial Protection Bureau.

26. Defendant's communications, purportedly reviewed by attorneys prior to being sent, are done with the goal to exert undue pressure on Plaintiff and consumers generally to compel them into making payment out of fear that Defendant, a law firm, will file a lawsuit against them if payment is not made.

27. As a result of receiving this correspondence, Plaintiff was unfairly confused regarding Defendant's representations and examinations of the subject consumer debt, and was further subjected to undue pressure that an attorney had reviewed her account and determined it was proper for legal action.

## **STANDING AND INJURY**

28. Plaintiff has suffered an injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

29. Specifically, Plaintiff suffered a concrete informational injury as a result of Defendant's failure to provide truthful information in connection with its attempt to collect an alleged debt from Plaintiff.

30. The Plaintiff has suffered and continues to suffer actual damages as a result of the Defendant's unlawful conduct.

31. As a direct consequence of the Defendant's acts, practices and conduct, the Plaintiff suffered and continues to suffer from humiliation, anger, anxiety, and frustration.

## **VIOLATIONS OF THE FDCPA-15 U.S.C. SECTION 1692, et seq.**

32. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

33. The Defendant's conduct violated 15 U.S.C. Section 1692e, e(3) and

e(10) by sending a correspondence to Plaintiff stating that it was from, and reviewed by, an attorney.  Upon information and belief, the attorney whose signature appears on the correspondence allow their signature to be used on hundreds of collection letters on a daily basis.  Based on the sheer volume of collection letters Defendant's attorneys send on a daily basis, Defendant's attorneys could not have engaged in a meaningful review of each collection letter sent and the underlying account(s) associated with those letters.  Instead, it is clear that Defendant's collection letter  was the result of mass produced campaign.  Sending form collection letters en masse said to be from an attorney when such attorney did not engage in a meaningful review of the letter and the associated accounts falsely implied that such attorney has reviewed the file and made the professional, considered determination to send the letter.  Instead, the lack of sufficient review and the lack of any attorney judgment as to whether to send collection letters is in violation of the FDCPA.

34. The FDCPA, pursuant to 15 U.S.C. Section 1692f prohibits a debt collector from using unfair or unconsicounable means to collect or attempt to collect any debt."

35. Defendant violated 1692f when it unfairly and unconscionably attempted to collect on a debt by falsely represented to Plaintiff the correspondence was reviewed by an attorney.  Based upon the mass produced nature of Defendant's collection letter, Defendant unfarily attempted to escalate that concern over the subject consumer debt in Plaintiff's mind by suggesting attorneys had reviewed her file and decided it was appropriate for legal action.  These means employed by Defendant only served to worry the and confuse Plaintiff.

## **JURY DEMAND**

36. Plaintiff demands a trial by jury.

## **PRAYER FOR RELIEF**

37. Plaintiff demands the following relief:

WHEREFORE, the Court should enter Judgment in favor of Plaintiff and against Defendant for:

    (1) Statutory damages;

    (2) Attorney fees, litigation expenses and costs of suit; and

    (3) Such other and further relief as the Court deems proper.

    Respectfully submitted,

/s/ John Carlin_____
John P. Carlin #6277222
Suburban Legal Group, PC
1305 Remington Rd., Ste. C
Schaumburg, IL 60173
jcarlin@suburbanlegalgroup.com
Attorney for Plaintiff